# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

---

CONNIE S.[1],

|                                        | Plaintiff,          |
|:--|:--|

v.                              No. 5:18-CV-147
(ATB)

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

---

PETER L. WALTON, ESQ., for Plaintiff
VERNON NORWOOD, Special Asst. U.S. Attorney for Defendant

ANDREW T. BAXTER, U.S. Magistrate Judge

## MEMORANDUM-DECISION and ORDER

This matter was referred to me, for all proceedings and entry of a final judgment,

pursuant to the Social Security Pilot Program, N.D.N.Y. General Order No. 18, and in

accordance with the provisions of 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, N.D.N.Y.

Local Rule 73.1 and the consent of the parties. (Dkt. Nos. 7-9).

## I.    PROCEDURAL HISTORY

On July 16, 2014, plaintiff protectively filed[2] an application for Supplemental

---

[1] In accordance with recent guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, which was adopted by the Northern District of New York in June 2018 in order to better protect personal and medical information of non-governmental parties, this Memorandum-Decision and Order will identify the plaintiff using only her first name and last initial.

[2] When used in conjunction with an "application" for benefits, the term "protective filing" indicates that a written statement, "such as a letter," has been filed with the Social Security Administration, indicating the claimant's intent to file a claim for benefits. *See* 20 C.F.R. §§ 404.630, 416.340. There are various requirements for this written statement. *Id.* If a proper statement is filed, the Social Security Administration will use the date of the written statement as the filing date of the application even if the formal application is not filed until a later date.

Security Income Benefits ("SSI"), alleging May 8, 2012 as the disability onset date. (Administrative Transcript ("T") 177, 280). In her application, plaintiff alleged disability due to "back problems," arthritis, and asthma. (T. 177, 285). Her claim was initially denied on October 2, 2014. (T. 185).

Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which was held by video on May 25, 2016 before ALJ Marie Greener. (T. 108-24). At the hearing, the ALJ and plaintiff's counsel elicited testimony from plaintiff. (*Id.*). On August 9, 2016, ALJ Greener found that plaintiff was not disabled from July 16, 2014 through the date of her decision. (T. 102). The ALJ's decision became the Commissioner's final decision when the Appeals Council denied plaintiff's request for review on December 27, 2017. (T. 1-4).

## II.  GENERALLY APPLICABLE LAW

### A.  Disability Standard

To be considered disabled, a plaintiff seeking disability insurance benefits or SSI disability benefits must establish that he is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . " 42 U.S.C. § 1382c(a)(3)(A). In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be

hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step process, set forth in 20 C.F.R. sections 404.1520 and 416.920, to evaluate disability insurance and SSI disability claims.

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which meets or equals the criteria of an impairment listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner ] will consider him disabled without considering vocational factors such as age, education, and work experience . . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant can perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see* 20 C.F.R. §§ 404.1520, 416.920. The plaintiff has the burden of establishing disability at the first four steps. However, if the plaintiff establishes that her impairment prevents her from performing her past work, the burden then shifts to the Commissioner to prove the final step. *Id.*

## B. Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supported the decision. *Selian v. Astrue*, 708 F.3d at 417; *Brault v. Soc. Sec. Admin, Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); 42 U.S.C. § 405(g)). Substantial evidence

is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Talavera v. Astrue*, 697 F3d 145, 151 (2d Cir. 2012). It must be "more than a scintilla" of evidence scattered throughout the administrative record. *Id.* However, this standard is a very deferential standard of review " – even more so than the 'clearly erroneous standard.'" *Brault*, 683 F.3d at 448.

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams on behalf of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). However, a reviewing court may not substitute its interpretation of the administrative record for that of the Commissioner, if the record contains substantial support for the ALJ's decision. *Id*. *See also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

An ALJ is not required to explicitly analyze every piece of conflicting evidence in the record. *See, e.g., Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983); *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981) (we are unwilling to require an ALJ explicitly to reconcile every conflicting shred of medical testimony). However, the ALJ cannot "'pick and choose' evidence in the record that supports his conclusions." *Cruz v. Barnhart*, 343 F. Supp. 2d 218, 224 (S.D.N.Y. 2004); *Fuller v. Astrue*, No. 09-CV-6279, 2010 WL 5072112, at *6 (W.D.N.Y. Dec. 6, 2010).

## III. FACTS

As of the date of the hearing, plaintiff was 52 years old. (T. 112). She resided

with her son, his three children and his girlfriend. (*Id.*). Plaintiff was enrolled in special education classes in her last year of high school, and subsequently obtained an "IEP" diploma. (T. 113, 117). She later enrolled in a college class for medical assistant training, however it "got too hard" and she stopped attending. (T. 117).

Plaintiff was most recently employed as a part-time counter clerk from 2007 to 2009. (T. 287). Prior to that she worked as a full-time lead sales associate at Dollar General for two years, until she was let go. (T. 113, 287). She was not working at the time of the hearing, however she volunteered for the West Carthage Auxiliary, making coffee and sandwiches for the local fire department. (T. 117).

Plaintiff testified that she experienced low back pain every day, which manifested as a sharp, shooting pain made worse by sitting, standing, bending over and lying down. (T. 114, 119, 121). She further testified that her back pain made sleeping difficult. (T. 122). Lifting her two-month-old grandchild was painful, but she assisted with childcare such as changing diapers and taking her grandchildren outside to play. (T. 115-16, 121). At the Dollar General she had a lifting requirement of at least 50 pounds. (T. 118). She testified that she could no longer lift that amount of weight. (*Id.*).

In addition to her back pain, plaintiff also experienced sharp pain in her legs when she walked for "too long." (T. 114, 119). Plaintiff further testified that she experienced a sharp pain in her wrist when she lifted something heavy. (T. 115). She struggled to grab with her left index finger, because it "doesn't bend all the way." (*Id.*). Plaintiff still experienced shooting pains in her wrist and up her arm, and she had

difficulty grasping. (T. 118). At the time of the hearing, plaintiff testified that she sometimes dropped water bottles or milk gallons because of her difficulty grabbing heavy items. (T. 119). She experienced some weakness in her left hand. (*Id.*).

Plaintiff further testified that she experienced migraine headaches two to three times a week, which lasted all day. (T. 120). The migraines required her to lie down in a dark room, or even seek out emergency treatment. (T. 120). Plaintiff took Topamax every morning to prevent the migraines, but sometimes they developed, regardless. (T. 120).

On a typical day, plaintiff watched television and assisted her family with chores such as sweeping, mopping, dusting, cooking, folding clothes, grocery shopping, and watching her grandchildren. (T. 116-17). She would clean for approximately half an hour, then sit and take a break due to her back pain. (T. 123). She testified that she could sit for a period of five to ten minutes at a time, or for approximately two hours throughout the course of an eight hour day. (T. 120-21). She could stand for two to three hours at a time. (T. 121).

## IV.  **THE ALJ'S DECISION**

The ALJ first found that plaintiff had not engaged in substantial gainful activity since her application date of July 16, 2014. (T. 97). Next, the ALJ found that plaintiff had the following severe impairments at step two of the sequential evaluation: lumbar degenerative disc disease and asthma. (*Id.*). The ALJ further found that, although there was evidence that plaintiff had a history of various other medical conditions,[3] these

---

[3] The ALJ identified plaintiff's history of migraine headaches, allergies, hypercholesterolemia, hypertension, gastroesophageal reflux disease, obesity, sigmoid polyp, and

conditions had either resolved, required little or no treatment, or had been adequately controlled with treatment, and none had imposed more than minimal limitations on the plaintiff's ability to perform basic work activities for a continuous period of at least twelve months. (*Id.*). At the third step, the ALJ determined that plaintiff's impairments did not meet or medically equal the criteria of any listed impairments in Appendix 1 to 20 C.F.R. Part 404, Subpart P. (T. 98).

At step four of the analysis, the ALJ found that plaintiff was able to perform light work, as defined in 20 C.F.R. 416.967(b), with the exception that she should avoid concentrated exposure to respiratory irritants. (*Id.*). In making this RFC determination, the ALJ stated that she considered all of the plaintiff's symptoms, and the extent to which those symptoms could "reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. 416.929" and Social Security Ruling ("SSR") 96-4p. (T. 99). Finally, the ALJ stated that she considered opinion evidence pursuant to 20 C.F.R. § 416.927 and SSRs 96-2p, 96-5p, 96-6p and 06-3p. (*Id.*).

The ALJ then determined that plaintiff was unable to perform any of her past relevant work. (*Id.*). However, she also found that "considering the [plaintiff's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform." (T. 101). Accordingly, the ALJ determined that plaintiff was not disabled from the application

---

vitamin deficiencies. (T. 97). The ALJ also found plaintiff had a history of treatment with respect to her left upper extremity, however did not find the claimant to have a medically determinable impairment with respect to the same. (T. 98).

date of July 16, 2014 through the date of the ALJ's decision. (T. 102).

## V.    ISSUES IN CONTENTION

Plaintiff raises the following arguments:

1.    The RFC is not supported by substantial evidence.

2.    The ALJ failed to recognize the severity of plaintiff's borderline intellectual functioning and assess the severity of plaintiff's migraine headaches.

3.    The ALJ substituted her own judgment for competent medical opinion.

(Plaintiff's Brief ("Pl.'s Br."), Dkt. No. 11). Defendant argues that, because "substantial evidence supports the [ALJ's] decision and she applied the correct legal standards," this court should affirm the ALJ's decision. (Defendant's Brief ("Def.'s Br.") at 2, Dkt. No. 12). For the following reasons, this court finds that the ALJ improperly assessed plaintiff's RFC. Therefore, I will order a remand of this case for further proceedings.

## DISCUSSION

## VI.    RFC EVALUATION

### A.    Legal Standards

RFC is "what [the] individual can still do despite his or her limitations. Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis . . . " A "regular and continuing basis" means eight hours a day, for five days a week, or an equivalent work schedule. *Balles v. Astrue*, No. 3:11-CV-1386 (MAD), 2013 WL

8

252970, at *2 (N.D.N.Y. Jan. 23, 2013) (citing *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96–8p, 1996 WL 374184, at *2)).

In rendering an RFC determination, the ALJ must consider objective medical facts, diagnoses and medical opinions based on such facts, as well as a plaintiff's subjective symptoms, including pain and descriptions of other limitations. 20 C.F.R §§ 404.1545, 416.945. *See Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999) (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)). An ALJ must specify the functions plaintiff is capable of performing, and may not simply make conclusory statements regarding a plaintiff's capacities. *Martone*, 70 F. Supp. 2d at 150 (citing *Ferraris v. Heckler*, 728 F.2d 582, 588 (2d Cir. 1984); *LaPorta v. Bowen*, 737 F. Supp. at 183; *Sullivan v. Secretary of HHS*, 666 F. Supp. 456, 460 (W.D.N.Y. 1987)). The RFC assessment must also include a narrative discussion, describing how the evidence supports the ALJ's conclusions, citing specific medical facts, and non-medical evidence. *Trail v. Astrue*, No. 5:09-CV-1120, 2010 WL 3825629 at *6 (N.D.N.Y. Aug. 17, 2010) (citing Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *7).

### B. Application

As previously discussed, the ALJ concluded that plaintiff retained the residual functional capacity to perform light work, except she should avoid concentrated exposure to respiratory irritants. (T. 98). In reaching the RFC determination, the only

opinion evidence considered by the ALJ was a September 26, 2014 consultative examination by Elke Lorensen, M.D. (T. 390-93). Dr. Lorensen observed the following upon examination: Plaintiff was in no acute distress; she had a normal gait and stance; she declined walking on heels and toes, as well as squatting; she did not need help changing for the exam; and she was able to get on and off the exam table without difficulty, as well as rise from a chair without difficulty. (T. 391). Plaintiff reported that she cooked, cleaned, did laundry, and participated in child care daily. (*Id.*). She showered three times a day and dressed herself daily. (*Id.*).

Dr. Lorensen's musculoskeletal exam revealed some limited flexion, extension, and lateral flexion of the cervical and lumbar spine. (T. 392). Plaintiff's straight leg raise tests were negative bilaterally. (*Id.*). Her shoulders exhibited some limitation with forward elevation and abduction, and she exhibited full range of motion in the right elbow and wrist, but limited range of motion in the left elbow and wrist. (*Id.*). Plaintiff exhibited some limited range of motion in her hips and knees, with full range of motion in both ankles. (*Id.*). Her joints were stable and non-tender. (*Id.*). A neurologic exam revealed deep tendon reflexes physiologic and equal in both upper and lower extremities. (*Id.*). Decreased sensation to touch was noted in plaintiff's left arm, as well as 3/5 strength in the left arm. (*Id.*). With respect to plaintiff's fine motor activities, Dr. Lorensen indicated that plaintiff's hand and finger dexterity were not intact in the left hand, noting a grip strength of 0/5. (T. 393). He further noted that

plaintiff had marked difficulty zipping, unzipping, buttoning and unbuttoning with her left hand, and both hands were unable to tie together. (*Id.*). Based on his examination findings, Dr. Lorensen opined that plaintiff had "no gross limitations for sitting, standing, walking, or handling small objects with the right hand." (*Id.*). He further opined that plaintiff had "marked restrictions" for bending, lifting, reaching, pushing, and pulling with the left hand, and handling small objects with the left hand. (*Id.*). Last, Dr. Lorensen opined that plaintiff should avoid smoke, dust, and other respiratory irritants. (T. 393).

The ALJ allocated "great weight" to Dr. Lorensen's opinion with respect to plaintiff's capacity for sitting, standing, walking and handling small objects with her right hand, because it was consistent with his examination findings. (T. 99). The ALJ also adopted Dr. Lorensen's environmental limitations, in light of plaintiff's documented history of asthma and allergies. (T. 100). However, the ALJ rejected the remainder of Dr. Lorensen's assessment, because "the objective findings related to the plaintiff's back have been relatively mild[,] and the record does not establish a medically determinable impairment to support such left upper extremity limitations." (*Id.*). In support of her finding, the ALJ noted that plaintiff had "no problem" with her personal care, and was able to cook and prepare simple meals, clean, do laundry and wash dishes without assistance. (*Id.*). The ALJ also found that plaintiff helped take care of various pets and her three grandchildren, including changing the baby's diapers

and taking the children outside to "let them play." (*Id.*). The ALJ noted that plaintiff belonged to the West Carthage Fire Department Auxiliary and helped make coffee and sandwiches. (*Id.*). The ALJ also pointed out plaintiff's report that she was going to school and classes for "her degree." (*Id.*). The ALJ then assessed that, "considering these activities and the medical evidence of record," plaintiff retained the RFC to lift and/or carry 20 pounds occasionally and ten pounds frequently. (*Id.*).

The ALJ's assessed RFC is at odds with consultative examiner Dr. Lorensen's opinion relating to plaintiff's physical limitations for bending and lifting.[4] A consulting physician's opinion or report should generally be given little weight, if it conflicts with other opinions of record. *See Alvarez v. Colvin,* No. 15-CV-6193, 2016 WL 5791205, at *8-9 (W.D.N.Y. Sept. 30, 2016) (citing *Cruz v. Sullivan*, 912 F.2d 8, 13 (2d Cir. 1990)); *see also Camille v. Colvin*, 104 F. Supp. 3d 329, 343 (W.D.N.Y. 2015). However, when it is not contradicted, there must be "overwhelmingly compelling" evidence for an ALJ to overcome the consulting physician's opinion. *Giddings v. Astrue,* 333 F. App'x 649, 652-53 (2d Cir. 2009); *Vega v. Colvin,* No. 1:15-CV-01014, 2017 WL 1313836, at *2 (W.D.N.Y. Apr. 8, 2017) (the ALJ's decision "does not provide the 'compelling critique needed to overcome the uncontradicted medical opinion of" a consultative internal medicine examiner with regard to the extent of plaintiff's limitations) (citing *Giddings,* 333 F. App'x at 652). Moreover, in the

---

[4]Dr. Lorensen's opinion does not specifically contemplate limitations with respect to "carrying." (T. 393).

absence of supporting medical opinion evidence, it is impermissible for the ALJ to rely on his own lay interpretation of the medical evidence to overcome the consulting physician's opinion. *Id.* (citing *Giddings,* 333 F. App'x at 652). Before discounting a medical opinion from a consultative examiner, the ALJ must consider the following factors: the examining relationship, the evidence in support of the medical opinion, the consistency of the opinion with the record as a whole, whether the opinion is from a specialist, and whatever other factors tend to support or contradict the opinion. *Spielberg v. Barnhart*, 367 F. Supp. 2d 276, 281 (E.D.N.Y. 2005); *see also* 20 C.F.R. §416.927(c)(1)-(6).

The ALJ rejected these portions of Dr. Lorensen's opinion because they were purportedly inconsistent with the evidence of record. However, it is clear from the ALJ's decision that her primary reason for rejecting Dr. Lorensen's opinion was plaintiff's ability to engage in certain activities of daily living. (T. 100). Although ALJs must consider claimants' activities of daily living (20 C.F.R. §§ 404.1529(c)(3)(i)-(vii) and 416.929(c)(3) (i)-(vii)), "it is well-settled that [s]uch activities do not by themselves contradict allegations of disability, as people should not be penalized for enduring the pain of their disability in order to care for themselves." *Knighton v. Astrue*, 861 F. Supp. 2d 59, 69 (N.D.N.Y. 2012) (internal quotations omitted) (quoting *Woodford v. Apfel*, 93 F. Supp. 2d 521, 529 (S.D.N.Y. 2000)); *see also Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998) ("We have stated on numerous

occasions that 'a claimant need not be an invalid to be found disabled' under the Social Security Act."). "But[,] this is not to say that a plaintiff's daily activities cannot form part of a holistic calculus." *Freund v. Berryhill,* No. 17-CV-9967, 2019 WL 1323992, at *12 (S.D.N.Y. Mar. 25, 2019) (citing *Ellington v. Astrue*, 641 F. Supp. 2d 322, 332 (S.D.N.Y. 2009) ("If a claimant performs housework on a daily basis, the ALJ can *consider* such work as evidence that the claimant is not disabled." (emphasis added)); 20 C.F.R. § 416.929(c)(3)(i) (authorizing consideration of a claimant's "daily activities"). Indeed, the Second Circuit has approved an ALJ's consideration of "evidence that [a claimant] had the ability to cook and care for herself, operate a car, complete household chores, care for her son, and run errands" when assessing the credibility of the claimant's "statements regarding the intensity, persistence and limiting effects of [her] symptoms." *Drake v. Astrue*, 443 F. App'x 653, 657 (2d Cir. 2011) (summary order).

In this case, the ALJ's contention that plaintiff's activities do not support the level of physical limitation opined by Dr. Lorensen is weak, if not misleading, as plaintiff's reported activities of daily living do not indicate, in a vacuum, that plaintiff is capable of the degree of function set forth in the ALJ's RFC. The ALJ found that plaintiff had "no problems" with her personal care and was able to cook and perform simple house chores "without assistance." (T. 100). In fact, the record demonstrates that plaintiff could not perform simple house chores for any extended period of time

before requiring a break due to her pain, and that her family helped her with a myriad of her daily activities, including preparing meals and caring for their pets. (T. 297-99). With respect to her work with the West Carthage Fire Department Auxiliary, in the two instances she assisted them, she had to sit down within a two hour period because her back was bothering her. (T. 123). Furthermore, it is unclear to this court how plaintiff's ability to take her grandchildren outside "and let[ ] them play on their swing set" is indicative of a functional capacity to perform light work. (T. 100). Plaintiff's pursuance of a college class is further irrelevant to her ability to bend or lift. (T. 100). Otherwise stated, the ALJ did not identify any medical evidence to support her conclusion that plaintiff could satisfy the bending or lifting requirements of an RFC for light work,[5] but solely relied on plaintiff's reported activities of daily living in forming her opinion. "[W]hen a person chooses to endure pain on his [or her] own accord in order to participate in daily living activities, the ALJ should not 'hold this endurance against him [or her] in determining benefits unless his [or her] conduct showed that he [or she] is capable of working." *Balsamo*, 142 F.3d at 81-82 (internal citation omitted).

Moreover, and of particular concern, is that in rejecting the relevant portions of Dr. Lorensen's opinion, the ALJ lacked opinion evidence from any other acceptable medical source, and therefore determined plaintiff's RFC for bending and lifting based

---

[5]To perform light work, one must be able to lift up to twenty pounds. 20 C.F.R. 416.967(b). Both light and sedentary work require the ability to stoop or bend occasionally. SSR 83-14 at *4; SSR 96-9p, at *8.

on her own interpretation of the medical records. "[A]n ALJ is not qualified to assess a claimant's RFC on the basis of bare medical findings, and as a result an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence." *Dailey v. Astrue*, No. 09-CV-0099, 2010 WL 4703599, *11 (W.D.N.Y. Oct. 26, 2010) (internal quotation omitted) (report and recommendation), adopted, No. 09-CV-99A, 2010 WL 4703591 (W.D.N.Y. Nov. 19, 2010). Accordingly, although the RFC determination is an issue reserved for the Commissioner, "[w]here the medical findings in the record merely diagnose [the] claimant's exertional impairments and do not relate those diagnoses to specific residual functional capabilities," as a general rule, the Commissioner "may not make the connection himself." *Wilson v. Colvin,* No. 13-CV-6286, 2015 WL 1003933, at *21 (W.D.N.Y. Mar. 6, 2015) (citing *Deskin v. Comm'r of Soc. Sec.*, 605 F. Supp. 2d 908, 912 (N.D.Ohio 2008) (internal quotation omitted)). Although under certain circumstances, particularly where the medical evidence shows relatively minor physical impairment, "an ALJ permissibly can render a common sense judgment about functional capacity even without a physician's assessment," (*House v. Astrue*, No. 5:11-CV-915 (GLS), 2013 WL 422058 at *4 (N.D.N.Y. Feb. 1, 2013) (internal quotation omitted)), I conclude that those circumstances are not present here.

Plaintiff's treating physician declined to complete a Medical Source Statement on behalf of plaintiff, because plaintiff did not complete a Functional Capacity

Examination ("FCE").[6] (T. 773-78). As such, aside from Dr. Lorensen's report, the record does not contain medical opinion evidence with vocational or functional relevance for plaintiff's physical limitations. Although there are many treatment notes in the record, they generally contain bare medical findings and do not address how plaintiff's impairments affect her functional abilities, particularly with respect to lifting.[7] After discounting Dr. Lorensen's opinion of "marked restrictions," the ALJ determined that plaintiff retained the physical RFC to perform light work, particularly with the ability to lift and/or carry 20 pounds occasionally, and ten pounds frequently. (T. 100). It is unclear how the ALJ arrived at this RFC, as her opinion does not cite to specific medical evidence, but merely references the "medical evidence of record" in general. (*Id.*). Plaintiff's treating records indicate that, on occasion, she exhibited full

---

[6]The record reflects that plaintiff's insurance carrier would not cover the expense of an FCE, and that plaintiff was unwilling and/or unable to pay for an FCE out of pocket. (T. 408).

[7]Although not explicitly referenced by the ALJ, plaintiff's medical records, coupled with her testimony and disability application, could arguably constitute substantial evidence to support her finding that plaintiff retained the ability to bend "occasionally" (less than 1/3 of the time), in order to fulfill the requirements of an RFC for light work. Plaintiff's treatment records with Syracuse Orthopedic Specialists indicate that, upon examination, plaintiff exhibited minimal limitation in her lumbar range of motion. (T. 437, 441). Both plaintiff's 2013 and 2015 MRIs revealed "mild" findings of degenerative disk disease and bulged discs. (T. 442-43, 444-45). In her disability application, plaintiff indicated that she was able to perform some household chores and yard work, but only for limited periods of time due to the pain from *standing*. (T. 299). Nevertheless, with respect to lifting, the ALJ's RFC determination is not based on any medical opinion or treatment record relevant to plaintiff's functional abilities, and is therefore not supported by substantial evidence. *See Ostrom v. Comm'r of Soc. Sec.*, No. 7:14-CV-00268 (MAD/ATB), 2015 WL 1735097, at *10 (N.D.N.Y. Apr. 16, 2015) (Finding ALJ's determination regarding plaintiff's ability to lift and/or carry was not supported by substantial evidence, where ALJ rejected the only medical opinion regarding plaintiff's capacity for lifting and/or carrying, and merely referenced the "clinical findings" and "diagnostic images" as the basis for her findings).

muscle strength and range of motion through her arms upon examination (T. 436-37, 440-41). Plaintiff's primary care provider further questioned whether she would qualify for disability in terms of her lifting abilities. (T. 823). Nevertheless, these findings do not appropriately qualify plaintiff's functional ability to lift and/or carry, and are simply not specific enough to support the ALJ's conclusion that plaintiff retained an RFC to perform light work. See *Selian*, 708 F.3d at 421 (finding that ALJ's reliance on treating physician's statement that plaintiff could "lift . . . objects of a mild degree of weight on an intermittent basis" was too vague to support ALJ's finding that plaintiff could perform light work); *Laureano v. Comm'r of Soc. Sec.*, No. 1:17-CV-1347, 2018 WL 4629125, at *43-44, 2018 WL 4629125 (S.D.N.Y. Sep. 26, 2018) (reversing finding that plaintiff could perform medium work because the record was devoid of specific findings regarding plaintiff's ability to lift).

Under these circumstances, I conclude that the ALJ's physical RFC assessment is not supported by substantial evidence. *See Wilson,* 2015 WL 1003933, at *21 (citing *Suide v. Astrue*, 371 F. App'x 684, 690 (7th Cir. 2010) ("[w]hen an ALJ denies benefits, she must build an accurate and logical bridge from the evidence to her conclusion, . . . and she is not allowed to 'play doctor' by using her own lay opinions to fill evidentiary gaps in the record") (internal quotations and citations omitted)); *House*, 2013 WL 422058 at *4 ("[b]ecause there is no medical source opinion supporting the ALJ's finding that [plaintiff] can perform sedentary work, the court concludes that the

ALJ's RFC determination is without substantial support in the record and remand for further administrative proceedings is appropriate"); *Dailey*, 2010 WL 4703599 at *11 ("[w]ithout this additional medical evidence[,] [the ALJ], as a layperson, could not bridge the gap between plaintiff's [impairments] and the functional limitations that flow from these impairments"); *Walker v. Astrue*, No. 08-CV-0828, 2010 WL 2629832, *7 (W.D.N.Y. June 11, 2010); *Lawton v. Astrue*, No. 1:08-CV-0137 (LEK/DEP), 2009 WL 2867905, *16 (N.D.N.Y. Sept. 2, 2009) ("[t]he record in this [case] contains no assessment from a treating source quantifying plaintiff's physical capabilities, and thus there is no basis upon which the court can find that substantial evidence supports the ALJ's light work RFC determination"); *Deskin v. Comm'r of Soc. Sec.*, 605 F. Supp. 2d at 913 ("a remand is necessary to obtain a proper medical source opinion to support the ALJ's residual functional capacity finding").

The Court recognizes that an ALJ's RFC assessment is not required to "perfectly correspond with any of the opinions of medical sources cited in his decision." *Matta v. Astrue*, 508 F. App'x 53, 56 (W.D.N.Y. 2019). However, in this case the RFC finding is at odds with the only medical opinion of record regarding plaintiff's ability to bend, lift or carry, "and that leaves the court at a loss as to how the ALJ assessed plaintiff's physical limitations. The ALJ's failure to rely on sufficient evidence in assessing plaintiff's physical limitations requires remand." *Benman v Comm'r of Soc. Sec.*, 350 F. Supp. 3d 252, 260 (W.D.N.Y. 2018) (citing *Dailey*, 2018 WL 4625550, at *5 ("It is

unclear to this Court how the ALJ arrived at this RFC. Rather, the decision suggests

that the ALJ used her own lay opinion to determine [the plaintiff's] mental RFC. This

was error and requires remand")).

## VII.  PLAINTIFF'S REMAINING ARGUMENTS

Plaintiff has identified additional reasons why she contends the ALJ's decision

was not supported by substantial evidence.  However, because the court has already

determined, for the reasons previously discussed, that remand of this matter for further

administrative proceedings is necessary, the Court declines to reach these issues. *See*

*Bell v. Colvin*, No. 5:15-CV-01160 (LEK), 2016 WL 7017395, at *10 (N.D.N.Y. Dec.

1, 2016) (declining to reach arguments "devoted to the question whether substantial

evidence supports various determinations made by [the] ALJ" where the court had

already determined remand was warranted); *Morales v. Colvin*, No. 13-CV-06844, 2015

WL 2137776, at *28 (S.D.N.Y. Feb. 10, 2015) (the court need not reach additional

arguments regarding the ALJ's factual determinations "given that the ALJ's analysis

may change on these points upon remand").

## VIII.  NATURE OF REMAND

"When there are gaps in the administrative record or the ALJ has applied an

improper legal standard . . . remand to the Secretary for further development of the

evidence" is generally appropriate.  *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980).

This court cannot conclude that "substantial evidence on the record as a whole indicates

that the [plaintiff] is disabled[,]" and thus, I cannot recommend a remand solely for the determination of benefits. *See Bush v. Shalala*, 94 F.3d 40, 46 (2d Cir. 1996).

**WHEREFORE,** based on the findings above, it is hereby

**ORDERED**, that the decision of the Commissioner is **REVERSED** and this case **REMANDED**, pursuant to sentence four of 42 U.S.C. § 405(g), for a proper evaluation of the medical and other evidence, an appropriate determination of plaintiff's residual functional capacity, and other further proceedings, consistent with this Memorandum-Decision and Order, and it is

**ORDERED**, that the Clerk enter judgment for **PLAINTIFF**.

Dated: July 2, 2019

Hon. Andrew T. Baxter
U.S. Magistrate Judge